UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO BATLE MANANQUIL, | No. 2:18-cv-0252 AC P |
| Petitioner, | |
| v. | ORDER |
| SCOTT KERNAN, Warden, | |
| Respondent. | |

Petitioner is a former California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2015 conviction for making a criminal threat. ECF No. 1. Respondent has filed an answer and provided the state court record. ECF No. 8 (and attachments). Petitioner filed a traverse. ECF No. 9. The parties consented to the jurisdiction of the undersigned magistrate judge. ECF Nos. 6, 7.

BACKGROUND

I. Proceedings In the Trial Court

A. Preliminary Proceedings

An amended information charged petitioner Pedro Batle Mananquil with making criminal threats, disobeying a court order, and assault with a deadly weapon.

////

1

B.  The Evidence Presented at Trial[1]

The charges in this case stemmed from a dispute between petitioner and his neighbor, Krekor Keremian.  The jury heard evidence of the following facts.

In 2007, Keremian and his fiancée moved into a house next door to petitioner.  The two homes shared a long wall and had adjacent backyards.  The problems started in 2011, after petitioner's dog chewed the corner of the frame on Keremian's garage door.  There was a disagreement about who should repair the door.  Petitioner eventually agreed to fix it, but instead he did further damage to the door frame.  Later on, petitioner's sister later gave Keremian $100 to fix the door.

After that, petitioner regularly played loud music, used power tools, and banged on the walls in the early morning hours and frequently yelled and cussed at Keremian.  When Keremian would walking around petitioner's house (which he had to do to get his mail), petitioner would put his arms in a "cocked position" and look at Keremian in an aggressive manner, "stalk" him through his garage windows, and threaten him.  Petitioner also let his large pit bull approach Keremian, making Keremian afraid to get his mail at times.

Keremian complained to the police roughly 100 times about petitioner's behavior.  On March 26, 2013, Keremian obtained his first civil restraining order against petitioner, and his second on October 28, 2014.  Despite the two restraining orders, petitioner's threats continued.  Once, without any provocation, petitioner threatened to "kill [Keremian] with a rock."  Petitioner sent Keremian a text message saying that he was a snitch and snitches die in prison.  He also told Keremian: "Go fuck your sheriffs.  Go fuck police, and go fuck your public restraining order and personal restraining order."

The incidents charged as making a criminal threat and disobeying a court order occurred on May 1, 2015, when Keremian was taking his dog into his backyard.  As he walked onto his raised patio, Keremian saw petitioner in his yard, standing 15 or 20 feet from the fence.

---

[1] This summary is adapted from the opinion of the California Court of Appeal, ECF No. 8-6 at 2-12.  The undersigned has independently reviewed the trial transcript and finds the appellate court's recitation of the facts to be accurate.

Petitioner turned, they made eye contact, and petitioner said, "I'm going to kill you." Petitioner then "jotted [sic] back into his home." Keremian testified that he was afraid. He did not know if petitioner had something in his hands (which had been obscured) or if he had gone in his house to get a weapon; and he was cognizant of the prior "consistent" threats and harassment with the pit bull. Keremian immediately called the police, who arrived within an hour. Keremian does not recall what he did after the police left, including whether he left the house or slept at home that night.

Eight days later, petitioner threatened to kill Keremian, again without any provocation. Keremian was "[b]eyond upset" and called 911. Although he was tempted to "take matters into [his] own hands," he heeded the urging of his fiancée and the police and waited for law enforcement to arrive.

Petitioner's sister, Ofelia Baderna, testified for the defense. Keremian had complained to her about noise, the garage door issue, and other incidents with petitioner. Keremian also complained to her and to the homeowners' association that he felt threatened by petitioner's pit bull whenever he went to retrieve his mail. In her experience, however, the dog was friendly and docile. Baderna often received calls and texts from Keremian when she was working the night shift; to avoid interruptions at work, she eventually blocked Keremian on her cell phone.

  C. <u>Outcome</u>

A jury convicted petitioner of making a criminal threat and disobeying a court order, but found him not guilty of assault with a deadly weapon. The trial court sentenced petitioner to state prison for two years, with credit for two years served on the criminal threats charge and time served on the remaining charge.

  II. <u>State Post-Conviction Proceedings</u>

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on November 7, 2017 and stayed the sentence for contempt. ECF No. 8-5. The California Supreme Court denied review on January 17, 2018. ECF No. 8-7. Petitioner filed no applications for state habeas relief.

////

III.   Proceedings in this Court

The instant federal petition was filed February 5, 2018. ECF No. 1. It presents a single claim: that petitioner's conviction for criminal threats is constitutionally infirm because not supported by evidence sufficient to prove the offense beyond a reasonable doubt. Id. Respondent answered on May 4, 2018. ECF No. 8. Petitioner's traverse was filed on May 13, 2018. ECF No. 9.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

4

issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 563 U.S. at 102.

DISCUSSION

I.  Petitioner's Allegations

Petitioner alleges that the prosecution did not prove the criminal threats charge beyond a reasonable doubt. ECF No. 1 at 26. He argues that the nature of the threat ("I'm going to kill you") "failed to establish that [it] was so immediate that it conveyed a gravity of purpose and immediate prospect of execution." Id. at 30. Petitioner argues further that the circumstances of the alleged threat—both individuals in their respective backyards, separated by at least 15 to 20 feet and a tall fence—demonstrated "there was no evidence that a physical confrontation was

actually imminent or that appellant's words were accomplished by any show of physical violence." Id.

Petitioner also attacks the prosecution's case on the element of reasonable and sustained fear. Id. at 31. He argues that Keremian "did not describe what effect, if any, the threat had on his subsequent conduct that would suggest the fear persisted. In fact, Keremian could not even recall what else he did that evening, such as whether he left his house or slept in it that night. And he acknowledged [petitioner] never had been physical with him before." Id. at 32. Petitioner also argues that Keremian's subsequent conduct of calling the police was insufficient to establish that his fear was reasonable, because he frequently called the police whenever he had an issue with petitioner. Id. at 33.

## II.     The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326; see also Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).

In order to grant a writ of habeas corpus under AEDPA, the court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Juan H., 408 F.3d at 1274. The federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004). Because the Jackson standard is itself deferential, the AEDPA creates a "double dose of deference." Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011). The question is not whether this court finds the evidence insufficient, or whether the state court made a mistake, but whether

the state court's determination that a rational jury could have found sufficient evidence to find each element of the crime proven beyond a reasonable doubt was objectively unreasonable. Id. at 965.

### III. The State Court's Ruling

Petitioner raised his sufficiency of the evidence claim on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal for the First Appellate District constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The California Court of Appeal ruled as follows:

> Section 422 makes it a crime to "'willfully threaten to commit a crime which will result in death or great bodily injury to another person'" under specified circumstances, generally referred to as a "'criminal threat.'" People v. Toledo, 26 Cal.4th 221, 224 (2001). To prove a violation of section 422, the prosecution must establish all of the following: (1) the defendant "'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,'" (2) the defendant made the threat "'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,'" (3) the threat—which may be "'made verbally, in writing, or by means of an electronic communication device'"—was "'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,'" (4) the threat actually caused the person threatened "'to be in sustained fear for his or her own safety or for his or her immediate family's safety,'" and (5) the threatened person's fear was "'reasonabl[e]'" under the circumstances. Toledo, supra, 26 Cal.4th at pp. 227-28.
>
> Defendant challenges the sufficiency of the evidence as to elements 3, 4, and 5, and we examine them in order.
>
> First, we examine the nature of the threat to determine whether it was, under the circumstances, "so unequivocal, unconditional, immediate, and specific [that it] convey[ed] . . . a gravity of purpose and an immediate prospect of execution of the threat . . . ." Pen. Code, § 422(a). Defendant does not challenge the specificity of his statements, which were unequivocal and specific death threats. People v. Orloff, 2 Cal.App.5th 947, 953 (2016). Rather, he contends that the threats and the circumstances in which they were made were not "'so . . . immediate'" as to convey to Keremian a "'gravity of purpose and likelihood of execution.'" People v. Bolin, 18 Cal.4th 297, 340, fn.13 (1998).
>
> "'Immediacy'" means "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat

being carried out." People v. Melhado, 60 Cal.App.4th 1529, 1538 (1998). "[G]ravity of purpose" concerns whether the statements have "credibility as indications of serious, deliberate statements of purpose" to harm the victim. In re Ricky T., 87 Cal.App.4th 1132, 1137 (2001). The word "so" indicates that unequivocality, unconditionality, immediacy, and specificity are not absolutely mandated, but they must be sufficiently present in the threat and surrounding circumstances to suggest the threat is serious and likely to be carried out. People v. Bolin, supra, 18 Cal.4th at p. 340.

We do not employ "a simple checklist approach to determining the sufficiency of the evidence." In re Ryan D., 100 Cal.App.4th 854, 862 (2002). Rather, we first determine the facts and then whether, viewed in their totality, the circumstances show sufficient "'gravity of purpose'" and "'immedia[cy].'" Id. We do not rely solely upon the defendant's words; we also consider context, which gives meaning to the words used. Id. at p. 862.

The circumstances here support the jury's finding of both gravity of purpose and the immediate prospect of execution. The statement, "'I'm going to kill you,'" was made by a hostile neighbor who had, for several years, engaged in a campaign of verbal threats and abuse, demeaning insults, and physical intimidation. Further, he rejected Keremian's attempts to defuse the dispute and only escalated his behavior. Ryan D., supra, 100 Cal.App.4th at p. 860 [prior relationship of the parties relevant to interpreting immediacy and gravity element]; Ricky T., supra, 87 Cal.App.4th at pp. 1137-38 [prior threats and hostile remarks are relevant]; People v. Butler, 85 Cal.App.4th 745, 755 (2000) [defendant's prior demeaning insults properly considered].

Further, defendant's death threat was unprovoked and sustained. Keremian had just entered his backyard and glanced at defendant's backyard (as was his cautious habit) when defendant turned and yelled that he would kill Keremian. This supports the jury's conclusion that the threat was both deliberate and serious. Compare Ricky T., supra, 87 Cal.App.4th at p. 1138 ["intemperate" outburst was triggered by specific provocation, not a deliberate, premeditated threat].

Although defendant argues there were only words, unaccompanied by aggressive gestures or display of a weapon, such acts are not required. See, e.g., Melhado, supra, 60 Cal.App.4th at p. 1538. Neither does the fact that at the time of the threat defendant and Keremian were separated by at least fifteen feet and a six-foot redwood fence preclude a reasonable jury from finding gravity of purpose and an immediate prospect of execution under the circumstances here. People v. Orloff, supra, 2 Cal.App.5th at p. 953 [telephonic death threat, alone, satisfied immediacy/gravity criteria]; People v. Gaut, 95 Cal.App.4th 1425, 1431 2002 [jail inmate's telephonic threats, under the circumstances, were serious with immediate prospect of execution]. In any event, Keremian had testified to defendant's physically aggressive conduct in other, past encounters.

We also consider Keremian's reaction, which suggests that he perceived the threat as immediate and serious. He testified that, in light of the prior death threats and defendant's other actions, such as unleashing his pit bull

8

on him, he took the death threat seriously. His decision to immediately call the police corroborates his fear. Compare Ricky T., supra, 87 Cal.App.4th at p. 1138 [no immediacy where victim delayed in contacting authorities and police delayed investigation] and Melhado, supra, 60 Cal.App.4th at p. 1538 [sufficient immediacy and gravity where victim immediately called police].

Finally, we may consider defendant's willingness to repeatedly violate the law—by violating the restraining orders—in order to harm Keremian. See, e.g., People v. Butler, supra, 85 Cal.App.4th at p. 754 [defendant's commission of a crime (battery) demonstrated seriousness of threat and immediacy of execution]. Further, defendant's expressions of contempt for the law and law enforcement authorities suggest that he did not view them as a deterrent to carrying out his threats.

Melhado, supra, 60 Cal.App.4th 1529 is persuasive. There, the defendant was unable to pay for repairs to his automobile; and repair shop held his vehicle, conditioning its release upon payment in full. Id. at p. 1533. Defendant made some payments towards his balance and visited to check on the vehicle periodically. Id. at pp. 1532-33. At one point, he gave the manager a key chain with a bullet on it as a gift, claiming that he had served in Vietnam. Id. at p. 1532. Eventually, the repair shop moved the car into storage. Id. at p. 1533. When the defendant discovered that he could no longer check on his vehicle, he became visibly upset, threatening to "'blow . . . away'" the manager and the shop, and saying he would go home to get a grenade. Id. Although the defendant did not display a weapon or physical aggression, the court found that "a face-to-face confrontation with an angry man threatening to go home and get his grenade," alone, satisfied the third element of the statute. Id. at p. 1538.

Ricky T., supra, 87 Cal.App.4th 1132, on which defendant heavily relies, is hardly comparable. After a student pounded on a classroom door, the teacher opened it, accidentally hitting the student. Id. at p. 1135. The student responded by angrily threatening to "'get'" the teacher. Id. No further threats or aggression followed, and indeed, one day later the student apologized to the investigating officer. Id. at p. 1135-36, 1138. In Ricky T., the threat was a mere "intemperate" emotional outburst, provoked by an isolated incident, and the threat quickly dissipated; it was not a genuine, serious threat with any likelihood of execution. Id. at p. 1138-39. Here by contrast, defendant engaged in a protracted campaign of insults, threats, harassment, and physical intimidation leading up to—and continuing after—the charged criminal threat. The threat to kill was deliberate, not provoked, and substantial evidence supports the inference that their feud was anything but over.

Indeed, Keremian testified that defendant threatened him with death again, only a week later. Compare Ryan D., supra, 100 Cal.App.4th at p. 864 [finding insufficient indicia of immediacy when defendant's threat was not directly conveyed to victim and not followed by additional threats or other confrontations]; Ricky T., supra, 87 Cal.App.4th at pp. 1135-1136 [single, vague threat was followed the next day with an apology to officer]. Defendant's argument that the jury *should have* concluded that there was no danger to Keremian once defendant went back into his house, runs afoul of the appropriate standard of review. That is, we need only determine that there is substantial evidence to support the verdict, and

9

cannot reverse simply because the circumstances might be reconciled with some other finding. Covarrubias, supra, 1 Cal.5th at p. 890.

"Section 422 also requires that the threat be such as to cause a reasonable person to be in *sustained fear* for his personal safety." Ricky T., supra, 87 Cal.App.4th at p. 1139. The victim must be in actual, sustained fear (a subjective inquiry) that is also reasonable under the circumstances (an objective inquiry). Id. at pp. 1139-40. To be "sustained," the victim's fear must be more than "momentary, fleeting, or transitory." People v. Allen, 33 Cal.App.4th 1149, 1156 (1995); see also People v. Fierro, 180 Cal.App.4th 1342, 1346 (2010) [fear of death during one-minute confrontation with man displaying a weapon is sufficiently sustained].

There is no real dispute that defendant's threat caused Keremian fear for his personal safety. Keremian testified that he experienced subjective fear following the threat, explaining why he believed defendant might have been capable of carrying it out; this is corroborated by his decision to immediately contact the police and wait for them in his home. We presume that the jury credited this testimony, a finding we cannot overturn on appeal. Covarrubias, supra, 1 Cal.5th at p. 890. Moreover, there is substantial evidence to support the jury's finding that Keremian's fear was objectively reasonable. See, e.g., Melhado, supra, 60 Cal.App.4th at pp. 1536-37 [although defendant never before harassed, threatened, or berated the victim, victim's fear after defendant threatened to get a grenade and blow him up was "perfectly reasonable"].

Defendant mainly disputes that Keremian's fear was "sustained," arguing the evidence is insufficient because Keremian did not specifically testify as to the duration of his fear. Defendant cites no legal authority requiring direct testimony on this subject. And Allen, supra, mentions none. In that case, defendant briefly stood at the victim's back door, brandished a weapon, threatened to kill her, and fled. Allen, supra, 33 Cal.App.4th at pp. 1155-56. The victim contacted authorities, and defendant was arrested. Id. at p. 1156. The jury apparently inferred that the victim was in fear from the time of the threat until defendant's arrest, a period of just fifteen minutes. The Court of Appeal held that "more than" satisfied the duration requirement. Ibid.

In any event, in the absence of direct evidence, we may consider the surrounding circumstances, viewing them in the light most favorable to the prosecution, and presuming the existence of all facts the jury reasonably could infer from the evidence. Covarrubias, supra, 1 Cal.5th at p. 890. The circumstances more than support the jury's finding that Keremian's fear was sufficiently "sustained."

First, Keremian waited for up to an hour between the threat and the time the police arrived in response to his call. No evidence suggests that Keremian's fear subsided before the police arrived. Allen, supra, 33 Cal.App.4th at pp. 1155-56. Indeed, when defendant threatened to kill him again *eight days later*, Keremian became so upset—"beyond furious"—that he considered taking matters into his own hands, but evidently was still afraid enough to call the police and then obey their instructions to stay in his home.

Further, Keremian testified that he was fearful because he had endured

10

> many prior threats and witnessed defendant's defiant attitude towards the authorities.  He admitted that the situation made him so angry that he occasionally cursed at defendant, as he felt the need to "protect [him]self and [his] fiancee in [their] home."  Keremian had feared for his personal safety for a period of months, if not years.  Allen, supra, 33 Cal.App.4th at p. 1156 [knowledge of the prior acts of the defendant is relevant to, and may weigh in favor of, the existence of a sustained fear].
>
> To the extent defendant suggests that the degree of fear and their duration are interrelated, and must be considered together, People v. Fierro, supra, 180 Cal.App.4th 1342, the evidence here more than suffices.  Only eight days after the threat charged in this case, defendant threatened Keremian again, causing him to fly into a fearful rage.  From this, the jury could have easily inferred that Keremian experienced substantial fear for eight days.  This constitutes substantial evidence that Keremian's fear was both sustained and objectively reasonable.

ECF No. 8-6 at 5-11.

IV.     Objective Reasonableness Under § 2254(d)

The state court's rejection of petitioner's sufficiency of the evidence claim is entitled to deference under AEDPA.  See Juan H., 408 F.3d at 1274 (holding that a federal habeas petitioner's Jackson claim is subject to deferential review under AEDPA).  Although the state court did not expressly cite Jackson in rejecting petitioner's claim, its analysis was consistent with and a reasonable application of the Jackson standard.  See id. at 1274-75 & n.12 (although though no relevant federal law was cited by state court, "the question for [federal court] remains whether the state court in substance made an objectively unreasonable application of the [federal] standards for sufficiency of the evidence"); see also People v. Johnson, 26 Cal. 3d 557, 575-78 (1980) (explaining that state law sufficiency of the evidence review in California follows the Jackson standard).

As noted above, five elements are required to prove a criminal threats charge in California: "'(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the

person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances.'" People v. Roles, 44 Cal. App. 5th 935, 941-42 (2020).

Petitioner's first allegation is that the prosecution failed to prove beyond a reasonable doubt that the threat conveyed "a gravity of purpose and an immediate prospect of execution of the threat." "[T]he determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone.  The parties' history can also be considered as one of the relevant circumstances." People v. Meondoza, 59 Cal.App.4th 1333, 1340 (1997).  Indeed, California courts have held that section 422 does not require an immediate ability to carry out a threat.  See In re David L., 234 Cal.App.3d 1655, 1660 (1991).

Here, the parties had a lengthy and contentious history that reasonably could have led Keremian to believe petitioner's threat was "unequivocal, unconditional, immediate, and specific." ECF No. 8-4 at 80.  Keremian testified that he had called the police roughly 100 times on petitioner and took out two restraining orders against him.  He sought the first restraining order because petitioner threatened and harassed him, and the second because petitioner had not stopped threatening and harassing him.  Id. at 85-86.  Even with both restraining orders in place, petitioner continued to contact Keremian and threaten him.  Id. at 82-86.  Keremian also testified that he was afraid of petitioner's pit bull and that petitioner would unleash his dog every time Keremian went outside.  Id. at 81.  Finally, the threat itself: petitioner looked Keremian in the eyes and said, "I'm going to kill you." Id. at 80.  Keremian told the jury he was so afraid in that moment that he immediately called the police.  Id. at 81-82.  A jury could reasonably find that a person standing 15 to 20 feet away, looking directly at another person, and saying "I'm going to kill you," is making a threat that is unequivocal, unconditional, immediate, and specific.

////

Turning to petitioner's second contention—that there was insufficient evidence for the jury to find that Keremian was in sustained and reasonable fear—the undersigned finds nothing unreasonable in the state court's conclusion that substantial evidence supported the jury's finding. Keremian was already afraid of petitioner from their numerous previous encounters, the parties had a long and documented history of conflict, and Keremian immediately called the police following petitioner's threat. These circumstances all support an inference that Keremian was in reasonable and sustained fear from petitioner's threat.

Petitioner relies on In re Ricky T., 87 Cal.App.4th 1132 (2001) for the proposition that Keremian did not suffer from sustained fear because he did not describe the duration or intensity of his fear. ECF No. 1 at 32. Petitioner's reliance on this case is misplaced. In Ricky T., a student banged on the door to a classroom, and when the teacher opened the door, it accidentally hit the student. Id. at 1135. The student responded by saying to the teacher, "I'm going to get you." Id. The teacher sent the student to the school's office but did not notify the police until the following day. Id. at 1135, 1140. The Court of Appeal reversed the student's criminal threat conviction, finding in part that the teacher's action of sending the student to the school's office and only contacting the police the next day did not support a finding of sustained fear. Id. at 1140. The case before this court case is readily distinguishable. Keremian, unlike the teacher in Ricky T., immediately called the police, thereby demonstrating his sustained fear. See ECF No. 8-4 at 80-81.

Petitioner argues that Keremian's call to the police was insufficient to support a jury finding of sustained fear. He theorizes that Keremian's numerous calls to the police were evidence of Keremian's practically habitual response to any interaction with petitioner. The fact that Keremian often relied on police support for past interactions with petitioner does not preclude a finding that he experienced sustained fear on May 1, 2015, however. Even if the history of calls might be consistent with habitual overreaction as well as with a pattern of fear and intimidation, the most this would establish is that the evidence could support either inference. Where evidence supports conflicting inferences, an insufficient evidence claim necessarily fails. Jackson, 443 U.S. at 326; Juan H., 408 F.3d at 1274, 1275 & n.13.

In sum, nothing about Ricky T. or any other authority or argument presented by petitioner demonstrates that the California Court of Appeal's sufficiency of the evidence analysis constitutes an objectively unreasonable application of the Jackson standard. The undersigned finds, to the contrary, that the state court's rejection of this claim was consistent with and a reasonable application of Jackson. Even if reasonable jurors could have reached a different result based on the evidence at petitioner's trial, the double deference required under Jackson and the AEDPA precludes federal habeas relief. See Boyer, 659 F. 3d at 964.

CONCLUSION

For all the reasons explained above, IT IS HEREBY ORDERED as follows:

1. The petition for writ of habeas corpus is denied, and
2. The court declines to issue certificate of appealability under 28 U.S.C. § 2253(c)(2).

DATED: June 17, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE